J-A01042-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| V.C.T., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| J.W.T., | : | |
| | : | |
| Appellant | : | No. 1372 EDA 2020 |

Appeal from the Order Entered July 10, 2020
in the Court of Common Pleas of Montgomery County
Civil Division at No(s): No. 2010-33188

BEFORE:    BENDER, P.J.E., OLSON, J. and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: APRIL 5, 2021**

J.W.T. (Father) appeals from the July 10, 2020 order relating to the trial court's earlier June 12, 2020 primary physical custody award of J.T. (Daughter) to V.C.T. (Mother) and a contempt finding as to Father of a prior custody order.  Upon review, we affirm.

We summarize the relevant facts and procedural history of this case as follows.  Mother and Father, who married, separated, and divorced in 2001, 2010, and 2016, respectively, are parents of Daughter, born in September 2003, and J.T. (Son), born in April 2002 (collectively, Children).  Mother and Father had been sharing physical and legal custody of Children pursuant to a May 2, 2012 order of court.  Mother and Father each exercised physical custody as set forth in paragraph 6 of the custody order.

> (c)    Commencing Monday, May 7[, 2012,] and every other
> week  thereafter,  Mother  shall  have  custody  of  [Children]  on

*Retired Senior Judge assigned to the Superior Court.

Monday, Tuesday, Friday, Saturday, and Sunday overnights. Father shall have custody on Wednesday and Thursday overnights.

(d) Commencing Monday, May 14[, 2012,] and every other week thereafter, Father shall have custody of [Children] on Monday, Tuesday, Friday, Saturday, and Sunday overnights. Mother shall have custody on Wednesday and Thursday overnights.

Custody Order, 5/2/2012, at 2. The order also contained a schedule for physical custody arrangements for the ensuing summers beginning in 2013. The order entitled Mother and Father to two, "non-consecutive weeks of vacation with [C]hildren" and, "if the parties can agree, they can each have an additional week of vacation in the summer either consecutive or non-consecutive." *Id.* at 4.

In October 2014, Mother filed a petition seeking primary physical custody subject to partial custody visitation and sole legal custody of Children on the basis that Father's mental and physical condition had deteriorated. The parties resolved the custody dispute during a custody conference. Accordingly, Mother withdrew her petition for modification of custody.

In July 2015, Mother filed an emergency petition seeking sole physical and legal custody of Children. Mother claimed Father was behaving in an abusive manner towards Children, such that it required immediate intervention to keep Children from harm. In response, Father filed a petition for custody evaluation. A hearing was held in August 2015, at which the

trial court determined Mother's petition was not an emergency. Thus, the trial court directed the parties, if they desired, to request a custody conciliation conference. A conference was scheduled for February 19, 2016, but four days prior, Mother agreed to withdraw her July 2015 petition.

The parties did not seek court intervention regarding custody for the next three years, until Mother and Father filed a series of petitions relevant to this appeal. On June 24, 2019, Mother filed an emergency petition alleging contempt of the May 2, 2012 custody order. Mother averred that Father violated the order by failing to follow the weekday and weekend physical custody schedule and the summer vacation terms. On July 26, 2019, Father filed an emergency counterclaim, alleging contempt of the same order on the same grounds. On August 5, 2019, Mother filed a petition to modify custody. In the petition, she requested primary physical and sole legal custody, averring simply that she believed it to be in Children's best interest. Petition for Modification of Custody Order, 8/5/2019, at ¶ 5.

The trial court conducted hearings on the three petitions on December 2-3, 2019, and February 20-21, 2020. At the hearings, the parties, Children, and other witnesses testified.

On June 12, 2020, the trial court issued an order ruling upon Mother and Father's petitions for contempt and Mother's petition for modification of custody (June 2020 Order). Without elaboration, the trial court found Father

in contempt of the May 2, 2012 custody order, but denied Father's counterclaim requesting that Mother be held in contempt. *Id.* at 4. However, the trial court imposed no penalties upon Father. *Id.* In the June 2020 Order, the trial court analyzed the 16 custody factors set forth at 23 Pa.C.S. § 5328(a), and concluded that it was in Daughter's best interest for Mother to have primary physical custody. June 2020 Order, 6/12/2020, at 2-5. It ordered Mother and Father to share legal custody. *Id.* at 5. The trial court declined to order custody of Son because Son had reached the age of 18 prior to the issuance of the June 2020 Order. *Id.* at 4-5.

Regarding physical custody of Daughter, the trial court specified that Father had custody on Wednesdays from 5:00 p.m. to 9:00 p.m. and every other Friday, Saturday, and Sunday, including overnights, beginning at 5:00 p.m. or after school on Friday until Monday at 9:00 a.m. or when school began. *Id.* at 5. An alternating holiday schedule was specified in detail. *Id.* at 6. Each parent was allotted two non-consecutive weeks of vacation per year with Daughter and was required to notify the other parent of the plans and itinerary at least 30 days in advance. *Id.* at 7. Each parent needed to ensure that Daughter attended all activities and events during the parent's respective custody periods. *Id.*

The order also contained an assortment of other provisions. Each party was prohibited from disparaging the other party in the presence of Daughter. *Id.* at 8. Specific to Father, Father was required to comply

promptly with all financial aid documentation for Daughter's college applications. *Id.* Further, he was prohibited from discussing the alleged rape of Children to Children or to a third party who may come in contact with them.[1] *Id.* The order also prohibited Father from recording any conversations he had with Children. *Id.* Father was obligated to begin counseling immediately to last for at least six months or as long as determined necessary by his psychiatrist or counselor. Inclusion of Children in Father's therapy was left at the discretion of Father's therapist, and if inclusion occurred, it was to be paid for by Father. *Id.* The purpose of the counseling was for Father to address his prior conversations with Children regarding their alleged rapes, his audio recording of conversations with Children, and his ability to connect emotionally with Children. *Id.* The trial court did not order Children or Mother to attend individual psychological/psychiatric therapy, but if Daughter decided to attend, the court required Mother to pay for any of Daughter's out-of-pocket costs that were not covered by Mother's medical insurance. *Id.*

Father timely filed a motion seeking post-trial relief and reconsideration of the June 2020 Order. In the portion of the motion seeking post-trial relief, Father alleged that the trial court erred in holding him in contempt because Mother's contempt motion had been withdrawn

_____

[1] Father alleges both Children were raped by a friend of Children. Son acknowledged he was raped, but Daughter denied that she was raped.

and the order did not specify which provision of the May 2, 2012 custody order he had violated. Father's motion also asked the court to reconsider whether the June 2020 Order and any provisions therein should address Son, given the court's finding that Son was emancipated. Further, he alleged the June 2020 Order was invalid because it mistakenly stated that Mother's August 5, 2019 petition to modify the May 2, 2012 custody order was denied.

On July 10, 2020, the trial court issued an order denying Father's requested post-trial relief and granting in part and denying in part Father's motion for reconsideration. Specifically, the trial court agreed with Father that it erred by including Son in the June 2020 Order and amended the June 2020 Order by changing references to Children to Daughter only. Furthermore, instead of granting Father's request to invalidate the June 2020 Order due to its error regarding Mother's August 5, 2019 petition to modify, the trial court further amended the June 2020 Order by clarifying that Mother had primary physical custody and the parties shared legal custody of Daughter. Father timely filed a notice of appeal.[2] Both Father and the trial court complied with Pa.R.A.P. 1925.

---

[2] While Father's motion for post-trial relief and reconsideration of the June 2020 Order was pending, Father filed a notice of appeal on July 8, 2020. The appeal was docketed in this Court at 1355 EDA 2020. Because the trial court granted reconsideration of the June 2020 Order within 30 days of that order, rendering the July 8, 2020 notice of appeal inoperative pursuant to
*(Footnote Continued Next Page)*

Father raises eight issues on appeal, which we have reordered for ease of disposition. Specifically, Father asks this Court to decide whether the trial court erred and abused its discretion in: 1) modifying an order of equal custody to grant Mother primary custody; 2) finding there was no evidence regarding the extended family of Father; 3) requiring that only Father undergo counseling; 4) not appointing a reunification therapist for Father and Son; 5) holding Father in contempt without stating a reason; 6) not holding Mother in contempt; 7) not allowing Father to call a witness; and 8) limiting Father's freedom of speech in violation of the First and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution. Father's Brief at 16.

We consider Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*(Footnote Continued)* ————————

Pa.R.A.P. 1701(3)(b)(ii), this Court *sua sponte* quashed Father's appeal at 1355 EDA 2020.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) (citation omitted)).

Father's first issue queries whether the trial court erred or abused its discretion by modifying the parties' shared physical custody arrangement to award primary custody to Mother. Father's Brief at 21. Father is nonspecific as to how the trial court abused its discretion in modifying their custody arrangement, but the essence of his argument centers on his contention that Mother intentionally caused hostility between Father and Children and therefore the trial court should not have changed the parties' arrangement to grant Mother more custody time with Children. *Id.* at 21-23.

"Upon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S. § 5338(a). Before making an award of custody, the Child Custody Act requires trial courts to consider all 16 factors set forth at 23 Pa.C.S. § 5328(a) to the extent the factors are relevant. *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M.*, 63 A.3d at 339.

One of the factors a trial court must consider when making any award of custody is "[t]he well-reasoned preference of the child, based on the child's maturity and judgment." 23 Pa.C.S. § 5328(a)(7).

> The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference. Moreover, as children grow older, more weight must be given to the preference of the child. As this Court has recently reaffirmed, where the households of both parents were equally suitable, a child's preference to live with one parent could not but tip the evidentiary scale in favor of that parent.

**B.C.S. v. J.A.S.**, 994 A.2d 600, 604 (Pa. Super. 2010).

This Court has espoused "that an older teenage child is like an elephant – she sleeps wherever she wants." **E.B. V. D.B.**, 209 A.3d 451, 468 (Pa. Super. 2019). To clarify, "[w]hile the 'Elephant Rule' is not incontrovertible, such as if a teenager's safety were at risk, or if the other factors strongly demonstrated that a teenager's preference was against her best interest, courts have to recognize the limitations of their power in determining where older teenagers must reside." **Id.**

In its Rule 1925(a) opinion, the trial court noted that it had conducted a full analysis of all 16 factors of subsection 5328(a) in the June 2020 Order. Trial Court Opinion (TCO), 9/2/2020, at 8. The trial court emphasized that it "meticulously reviewed the evidence" and engaged in a "thorough, detailed, non-biased, and balanced" analysis. **Id.** Ultimately, the trial court determined that shared physical custody "was neither practicable nor reasonable" and "was not in the best interest of [Daughter]." **Id.** at 8-9.

In the June 2020 Order, the trial court's analysis of the 16 factors reveals that many of the factors were neutral as to Mother and Father. Findings notable to Mother included its finding that Mother encourages Children to see Father even though Son has told her he doesn't want to; both parties accuse the other of turning Children against the other parent, and each parent denies engaging in such behavior; and conflict between Mother and Father is high. The court found, based on Mother's testimony, that she helps Daughter with anxiety and is actively involved in Daughter's education by assisting her with schoolwork, speaking with her teachers, and arranging tutoring. Overall, the court emphasized Children's independence due to their age. Daughter is almost 18 years old. Significantly, the court noted that Daughter testified she would like to live with Mother and see Father less often. June 2020 Order, 6/12/2020, at 2. Daughter's proposed schedule was to see Father "every other weekend, or, … every other weekend with … a day during the week." N.T., 2/21/2020, at 17. Indeed, the June 2020 Order relied on Daughter's preference and provided this exact arrangement as to physical custody.

Under an abuse of discretion standard, we cannot conclude that the trial court's decision to award primary custody to Mother was manifestly unreasonable. The trial court engaged in a thorough analysis of subsection 5328(a). Further, it properly gave more weight to and abided by Daughter's preference, as her safety was not at risk and no other factor strongly

demonstrated that her preference was against her best interest. *See E.B.*, 209 A.3d at 468. Thus, Appellant's first claim is without merit.

Father's second complaint also implicates the trial court's custody order. Father claims that the trial court erred when it found, pursuant to factor five, there was no evidence regarding his extended family. Father's Brief at 28; *see also* 23 Pa.C.S. § 5328(a)(5) (requiring the court to consider the availability of extended family). Father states "the record is replete with the identification of [his] extended family," citing that Erika Bower, a children and youth minister at Father's church, was "stipulated to be part of the extended family." *Id.* He goes on to cite several witnesses who testified to their relationship with Children.

Here, the trial court offered the following response to this issue:

> [T]he court stated that no testimony was provided to the court regarding the extended family of either party. The court did not err in making this statement. At the hearing, Mother testified that she did not have any extended family. Rather, according to Mother, her extended family consisted of "friends" and "sorority sisters." Additionally, Mother testified that Father only speaks to one of his sisters. Father did not elaborate during his direct examination regarding the nature of his extended family or their involvement with [Daughter]. Therefore, there is no merit to this issue ... and it should be dismissed.

TCO at 10-11 (citation to the record omitted).

We agree with the trial court. First, Father's assertion that the parties stipulated that Bower was part of Father's extended family is erroneous. The only pertinent stipulation was that Bower had witnessed a positive relationship between Father and Children during their interactions at church

activities and services. N.T., 12/3/2019, at 208. Second, the other witnesses Father points to as his extended family lack any familial relation. The record is devoid of evidence and testimony regarding the extended family of Father. Thus, Father's second claim is without merit.

Father next objects to the trial court's decisions to require only Father to attend counseling, and to not appoint a reunification therapist for Father and Son. Father's Brief at 24, 28. Father argues the entire family should be required to undergo counseling because he and Mother were in favor of Children's attending counseling and Mother testified that the family was dysfunctional. *Id.*

"The court may, as part of a custody order, require the parties to attend counseling sessions." 23 Pa.C.S. § 5333. Instantly, the trial court ordered individual counseling for Father, but left it within his therapist's discretion as to whether Children should be included. June 2020 Order, 6/12/2020, at 8. In this regard, the trial court stated, "Therapy might be needed for everybody[;] I don't know. I can't make those determinations. I don't have that kind of background." N.T., 2/21/2020, at 124. The trial court explicitly outlined in the June 2020 Order the issues for Father to address in his counseling. There is ample evidence to support why Father needed counseling. It was within the court's discretion not to order counseling for Mother and Children, but to leave the option available. Thus, we do not discern an abuse of discretion. No relief is due.

As to Father's contention that the trial court erred in failing to appoint a reunification therapist for him and Son, the issue is moot because Son turned 18 prior to the entry of the June 2020 Order and no longer is a "child" under the Custody Act. *See M.B.S. v. W.E.*, 232 A.3d 922, 928 (Pa. Super. 2020) (explaining that because the Custody Act defines a "child" as "[a]n unemancipated individual under 18 years of age," custody of son was moot because the trial court lost subject matter jurisdiction over parties' son upon his 18th birthday, notwithstanding son's educational status) (quoting 23 Pa.C.S. § 5322). Thus, the trial court has no jurisdiction to appoint a reunification therapist. Any relationship or lack thereof that Son would like to have with Father is entirely up to Father and Son. If Son would like to attend counseling or therapy individually or with Father, he may do so on his own accord.

Father's fifth issue asks us to decide whether the trial court erred or abused its discretion in holding him in contempt of the May 2, 2012 custody order. Father's Brief at 26. In both his post-trial motion and Pa.R.A.P. 1925(b) statement, Father claimed that the trial court erred by holding him in contempt because Mother's contempt motion was withdrawn and the June 2020 Order did not specify which provision of the May 2, 2012 custody order was violated.

We review custody contempt orders for an abuse of discretion. *K.M.G. v. H.M.W.*, 171 A.3d 839, 844-45 (Pa. Super. 2017). A trial court abuses

- 13 -

its discretion in entering a custody contempt order if it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. *Id.*

The Child Custody Act permits the trial court to adjudge in contempt any party who willfully fails to comply with a custody order. 23 Pa.C.S. § 5323(g). The trial court may issue various sanctions up to and including imprisonment for not more than six months. *Id.*

When a trial court adjudges someone in contempt of a custody order, five procedural elements are recommended to ensure due process: "(1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication." *Harcar v. Harcar*, 982 A.2d 1230, 1234-35 (Pa. Super. 2009). However, all five factors are not mandatory. *Id.* The "essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." *Id.*

First, we address Father's claim that Mother withdrew her contempt petition at trial. Addressing this claim, the trial court stated that "a present review of the notes of testimony from the above hearings indicate that at no point in time before, during or after the hearings did Mother or counsel for Mother state that Mother was withdrawing Mother's June 24, 2019 [p]etition for [c]ivil [c]ontempt[.]" TCO at 21. We agree. After a review of the

record, there is no evidence that suggests or indicates Mother withdrew her petition.

Second, Father argues the trial court erred or abused its discretion because the June 2020 Order did not specify which provision of the May 2, 2012 custody order was violated. Father's Brief at 26. In its June 2020 Order, the trial court granted Mother's petition and found Father in contempt of the May 2, 2012 custody order, but imposed no sanctions and did not elaborate upon its ruling. June 2020 Order, 6/12/2020, at 4. In its Rule 1925(a) opinion, the trial court explained it "found Father in contempt for violating the physical custody and vacation/holiday provisions of the May 2, 2012 Custody Stipulation as outlined by Mother in her June 24, 2019 [e]mergency [p]etition for [c]ontempt and from testimony." TCO at 21.

Mother's petition placed Father on notice of his alleged violations. The trial court then conducted a hearing on the petition, *inter alia*, and provided Father with an opportunity to be heard. Further, in the trial court's opinion, it clarified that it found Father in contempt based upon his failure to comply with the physical custody and vacation provisions of the May 2, 2012 custody order. Because the trial court complied with the essentials of due process, we discern no abuse of discretion.[3]

_____

[3] Father puts forth two additional arguments in his brief for the first time on appeal: that "[t]here [was] no testimony that [F]ather violated the physical custody or vacations/holiday provisions[,]" and the trial court erred because it did not impose punishment or any way of purging the alleged contempt. *(Footnote Continued Next Page)*

Father's interrelated issue asks us to decide whether the trial court erred or abused its discretion in failing to hold Mother in contempt for her noncompliance with the custody order. Father's Brief at 26-27. In response to this issue, the trial court states that it "heard no evidence or testimony to warrant the court finding Mother in contempt[.]" TCO at 21.

In its June 2020 Order, the trial court denied Father's July 26, 2019 emergency counterclaim without elaboration. June 2020 Order, 6/12/2020, at 4. Father's July 26, 2019 emergency counterclaim alleged violations by Mother of the weekday and weekend physical custody schedule and the vacation terms of the May 2, 2012 custody order. On appeal, Father abandons this claim that Mother violated the physical custody schedule and vacation terms of the May 2, 2012 custody order, and instead presents new allegations involving the non-disparagement clause of the May 2, 2012 custody order.[4] Specifically, Father argues that

_(Footnote Continued)_ ───────────────

Father's Brief at 26-27. These additional arguments are waived because they are raised for the first time on appeal, and because Father's Pa.R.A.P. 1925(b) statement was too vague for the trial court to identify and address these issues. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **see also Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (holding that Dowling's Pa.R.A.P. 1925(b) statement was not sufficiently specific for the trial court to identify and address the issue to be raised on appeal, and thus, issue was waived).

[4] The non-disparagement provision is set forth in paragraph 19 of the May 2, 2012 custody order and reads as follows:

_(Footnote Continued Next Page)_

[Mother] never encouraged [Son] to see his Father. She called [the] police when Children were with [F]ather attempting to have them return to her. She told Daughter to keep a secret from [] Father. She falsely reported to [Daughter] that [Father] would not permit two dance classes back-to-back[,] causing alienation between Father and Daughter.

Father's Brief at 27 (citations to the record omitted; names capitalized). Father's arguments regarding the non-disparagement clause are waived because he did not present these arguments to the trial court in the first instance. *See* Pa.R.A.P. 302(a).

Next, we consider Father's claim that the trial court erred or abused its discretion in not allowing Father to call his sister as a witness. Father's Brief at 27. In one paragraph, Father summarily argues that the trial court erred or abused its discretion because the trial court should hear from "every meaningful witness who has contact with the [C]hildren." *Id.*

By way of background, in the middle of his cross-examination of Mother at the December 3, 2019 hearing, Father requested that he call his sister to testify out of turn. Father's counsel "request[ed] the indulgence of

*(Footnote Continued)* ────────

The parties specifically agree that neither shall do or say anything which might cause estrangement between [C]hildren and the other parent, injure the opinion of the [C]hildren as to the other parent, or hamper the free and natural development of love and respect by the [C]hildren for the other parent. The parties also affirmatively agree that they shall not berate, criticize, or insult each other within hearing of the [C]hildren. The parties acknowledge that failure to comply with this provision is behavior not in the best interest and welfare of the [C]hildren.

Custody Order, 5/2/2012, at 6.

the [trial court] of interrupting the testimony of cross-examination to call the sister of [Father], who is a physician, who needs to be back at her medical practice, in New Jersey, by late morning to see patients." N.T., 12/3/2019, at 52. Father's sister was to testify to the "excellent" relationship between Father and Children. *Id.* at 53. Opposing counsel "strongly object[ed]" due to the "many interruptions by [F]ather since the inception of this trial trying to dismiss the case, late discovery requests. No one gave us notice that she would be here, that she had a time frame." *Id.* In response, the trial court stated, "I think we'll finish. I would like to finish cross with this witness first." *Id.* The cross-examination of Mother resumed, and Father's sister did not testify later in the trial.

"The conduct of trial and order of witnesses certainly is within the trial court's discretion." *Bunting v. Sun Co., Inc.*, 643 A.2d 1085, 1089 n.5 (Pa. Super. 1994) (citing Pa.R.C.P. 223). "A trial judge has broad powers concerning the conduct of a trial and particularly with regard to the admission or exclusion of evidence." *White v. White*, 650 A.2d 110, 112 (Pa. Super. 1994) (citation omitted). "In reviewing a trial court's decision to admit or exclude proffered testimony, this Court will reverse only if there has been an abuse of discretion or an error of law." *Id.*

Here, the trial court denied Father's request to call his witness out of turn in order to maintain the flow of the hearing. This determination was within the trial court's discretion, and we discern no abuse of discretion.

- 18 -

Further, there was ample evidence by the parties, Children, and other witnesses concerning the relationships of the parties. Father was not unfairly prejudiced by the trial court's determination. Thus, this claim fails.

Finally, Father contends that the June 2020 Order violates his free speech rights contained in the First and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution. Father's Brief at 25. By way of background, the order prohibits Father from discussing the rape of Son and alleged rape of Daughter "in the presence of [Daughter] or with any third parties who may come into contact with [Daughter]." June 2020 Order, 6/12/2020, at 12. Father claims his speech on the incident is necessary because "putting a gag in [Father's] mouth detracts from his ability to counsel and guide [Children] in any future litigation which might result from the rape."[5] Father's Brief at 25.

As Father challenges the provision in the June 2020 Order on the ground that it violates the right to free speech as guaranteed by the federal and state constitutions, his claim involves a pure question of law for which our scope of review is plenary and our standard of review is *de novo*. **S.B. v. S.S.**, 243 A.3d 90, 104 (Pa. 2020) (citation omitted). The United States Supreme Court has stated that "in cases raising First Amendment issues ...

---

[5] Although Father's argument addresses the prohibition as to Son and Daughter, we only address his argument as to Daughter because the issue is moot as to Son, based upon Son's no longer meeting the definition of child.

- 19 -

an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." **See Gentile v. State Bar of Nevada**, 501 U.S. 1030 (1991) (internal quotation marks and citations omitted).

In addition to implicating the important value of free exercise of speech, because Father claims the restriction in the June 2020 Order impacts his ability to "counsel and guide [Daughter]", Father's Brief at 25, he also implicates another highly important value: the fundamental right of parents to make decisions concerning the care, custody, and control of their children, as protected by the Due Process Clause of the Fourteenth Amendment. **See Shepp v. Shepp**, 906 A.2d 1165, 1173 (Pa. 2006).

The First Amendment prohibits Congress from "abridging the freedom of speech." U.S. Const. amend. I. The First Amendment's protection "is made applicable to the states through the Fourteenth Amendment." **S.B. v. S.S.**, 243 A.3d at 104 (citation omitted); **see also** U.S. Const. amend. XIV. Although one's constitutional right to free speech is fundamental, it is not absolute. **Nebraska Press Ass'n v. Stuart**, 427 U.S. 539, 570 (1976). Nonetheless, only those interests of the highest order and those not otherwise served can overbalance legitimate claims to a free exercise right. **See Shepp**, 906 A.2d at 1169 (discussing court-imposed restrictions on the free exercise of religion). When the free exercise clause is implicated in

conjunction with other constitutional protections, such as the freedom of speech and the right of parents with respect to the upbringing of their children, "a hybrid situation" is presented, which is subject to strict scrutiny. *Id.* at 1172 (citing *Employment Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 881 n.1, 882 (1990) (reaffirming a higher level of scrutiny for cases involving a free exercise claim made in conjunction with other constitutional protections, such as the right of a parent to direct the upbringing and education of his child)). The instant matter, combining a free exercise of speech claim with the fundamental right of parents to raise their children, is a "hybrid case." *Shepp*, 906 A.2d at 1172. Thus, we will apply strict scrutiny.

"Applying strict scrutiny, '[t]he [g]overnment may ... regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.'" *Id.* (quoting *Sable Communications of Cal v. FCC*, 492 U.S. 115, 126 (1989)). It is well-settled that protecting a minor's well-being from psychological and physical harm serves a compelling state interest. *Id.* (citing *Sable Communications of Cal*, 492 U.S. at 126). Thus, "[t]he power of the parent, even when linked to a free exercise claim, may be subject to limitation ... if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." *Id.* at 1173 (citing *Wisconsin v. Yoder*, 406 U.S. 205 (1972)

(holding that a court may prohibit a parent from advocating religious beliefs, which, if acted, upon, would constitute a crime, but only if it is established that doing so would jeopardize the physical or mental health or safety of the child)). "The state's compelling interest to protect a child in any given case, however, is not triggered unless a court finds that a parent's speech is causing or will cause harm to a child's welfare." *Id.*

At the hearing, Daughter testified that Father "was telling people that my brother and I were raped, while my brother was and I wasn't. And that made me uncomfortable." N.T., 2/21/2020, at 25. Daughter testified, "I said, hey, I wasn't raped. He yelled at me and said, yes, I was, as if he knew. But I'm my own person. I think I would've remembered that." *Id.* at 26. Daughter found it hypocritical that Father would not allow his medical condition to be discussed, but would tell "his friends or maybe my friends' parents that I was [raped] and my brother was [raped]." *Id.* at 27. Son testified that a reason he stopped seeing Father was that Father "would bring up a lot of instances that I didn't want to bring up to a lot of people around me." *Id.* at 18. To expand, Son testified that on "a weekly basis[,]" Father would "bring up[] explicit details from[] a rape trial[,]" question Son's decision-making because he was raped, and "let [him]self fall prey to those sorts of things." *Id.* at 18-19. Son stated he did not want "to hear on a weekly basis about those things." *Id.* at 19. Son is "afraid of what [Father] tells other people," "the way he reacts in certain situations," and afraid when

"he screams in [Daughter's] face that she's been raped, and my sister says no, and he just keeps screaming at her, yes, you were." *Id.* at 32. When Son was asked if he can confide in Father, he stated that he can "[a]s long as [he] is not too sensitive[,]" and provided the example of when he told Father details of his rape trial, Father "didn't take it well" and has "been using it against me ever since to make me upset." *Id.* at 53.

The trial court concluded that an order prohibiting Father from speaking to Daughter or third parties on this matter was necessary to protect Daughter's physical and emotional well-being. TCO at 22. The trial court determined this measure was in the best interest of Daughter, as she did not need to be reminded "constantly" of Son's rape and Father's contention that Daughter was raped.[6] *Id.*

---

[6] On appeal, Father relies on a Massachusetts case, *Shak v. Shak*, 144 N.E.3d 274 (Mass. 2020), to support his argument that the trial court erred in reaching this conclusion. Father's Brief at 26. Although we recognize that we may use cases from federal courts other than the United States Supreme Court, and the decisions of other states' courts, as guidance to the degree we find them useful and not incompatible with Pennsylvania law, we are not bound by those cases. *Eckman v. Erie Ins. Exchange*, 21 A.3d 1203, 1207 (Pa. Super. 2011). Further, the instant case is distinguishable from *Shak*, which determined the narrow issue of whether a non-disparagement clause violated free speech rights. It held that Massachusetts's interest in protecting children from being exposed to disparaging statements between parents did not satisfy the burden of justifying a restraint on free speech. *Shak*, 144 N.E.3d at 279. Nonetheless, the *Shak* court made note that assuming *arguendo* the state's interest in protecting children from such harm that may result from hearing a disparaging statement, the harm did not exist in the case. The *Shak* court concluded, "Because there has been no showing that any harm from the disparaging speech is either grave or certain, our analysis regarding the permissibility of the non[-]disparagement
*(Footnote Continued Next Page)*

Based on this evidence, we find the state's compelling interest to protect Daughter in this case was triggered, as it appears Father's speech is causing or will cause harm to Daughter's welfare. *See Shepp*, 906 A.2d at 1173.

Thus, we must determine whether the trial court's prohibition is the least restrictive means to further the articulated interest. We first note that we reject Father's contention that he must have the ability to discuss the event to counsel and guide Daughter, as Daughter maintains she has never been raped and no criminal charges are pending. Furthermore, based on Daughter's testimony, it is apparent Father is using the alleged rape of Daughter to undermine her decision-making rather than to counsel and guide her.

The impetus for the prohibition in the June 2020 Order was based on Daughter's wish for Father to cease discussing the rape of Son and alleged rape of Daughter with her and other individuals outside of the family. Daughter's request to not have this information disclosed to individuals who may come in contact with her is of paramount importance. To the extent

*(Footnote Continued)* ————————————

order issued in this case ends here." *Id.* at 280. Thus, the *Shak* court left open the possibility that there is such language that is so emotionally and psychologically harmful that it would justify a restraint on speech.

In the case *sub judice*, it is difficult to think of language that would be **more** harmful than being repeatedly told by your parent that you were raped. The emotional and psychological harm that would result from such behavior is distinguishable from the warring words that exist in households across the world every day. Thus, *Shak* is unpersuasive and inapplicable.

Daughter was a victim of sexual abuse as Father contends, a victim of sexual abuse must be afforded privacy to manage their well-being and work through negative emotions due to the incident on their own accord. The sensitive nature of the information disclosed by Father to individuals outside of the family is troubling, particularly because Father discloses the information in situations where there is no need for the person to know about Son's rape or Father's allegations of Daughter's rape. Father unjustifiably breaches Daughter's privacy and makes Daughter uncomfortable when Father discusses with others Son's rape and Father's allegations that Daughter was raped. Father undermines Daughter's judgment and makes her doubt her own experiences when he repeatedly discusses his allegations with her and others. Accordingly, the speech restriction in the June 2020 Order is the least restrictive means to provide Daughter necessary privacy and support her physical and emotional needs.

Therefore, based on our independent review of the record, we conclude the speech restriction is justified by the government's compelling interest of protecting the psychological and emotional well-being of Daughter, is the least restrictive means to further the articulated interest, and does not violate the First and Fourteenth Amendments of the United States Constitution or Article I, Section 7 of the Pennsylvania Constitution. Thus, we uphold the constitutionality of the speech restriction.

Order affirmed.

\*Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/5/21</u>